**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISON**

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND**                              **PLAINTIFF**

**VS.**                                                   **Civil Case. No. 2:24-cv-00086-KS-MTP**

**GREATER SOUTHEAST CONSTRUCTION, LLC,
COLONY CONSTRUCTION, LLC, NOBLE VII, LLC,
ONE3 ELECTRIC, LLC, and JOHN W. ADCOCK**                              **DEFENDANTS**

<u>**DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTER COMPLAINT**</u>

Defendants Greater Southeast Construction, LLC, Colony Construction, LLC, Noble VII, LLC, ONE3 Electric, LLC, and John W. Adcock (collectively "Defendants"), by and through undersigned counsel, file their Answer, Affirmative Defenses, and Counterclaim to Fidelity and Deposit Company of Maryland's ("F&D") Complaint and state as follows:

<u>**ANSWER**</u>

Defendants respond to the numbered paragraphs of Plaintiff's Complaint, paragraph-by-paragraph as follows:

<u>**PARTIES**</u>

1.      Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 1, and therefore, deny the same.

2.      Defendants admit that John S. Adcock is an individual domiciled in Mississippi. Except as expressly admitted, paragraph 2 is denied.

3.      Defendants admit that Greater Southeast Construction, LLC ("Greater Southeast") is a Mississippi limited liability company. Defendants deny that John S. Adcock is a member of Greater Southeast. The GAI drafted by F&D specifically identifies John Adcock as manager of Greater Southeast, and not a member. Thus, F&D was aware that John Adcock was manager of Greater Southeast, and not a member. Except as expressly admitted, paragraph 3 is denied.

4.      Defendants admit that Colony Construction, LLC ("Colony") is a Mississippi limited liability company. Defendants deny that John S. Adcock is a member of Colony. The Colony Rider specifically drafted by F&D identifies John Adcock as manager of Colony, and not a member. Thus, F&D was aware that John Adcock was manager of Colony, and not a member. Except as expressly admitted, paragraph 4 is denied.

5.      Defendants admit that ONE3 Electric, LLC ("ONE3") is a Mississippi limited liability company. Defendants deny that John S. Adcock is a member of ONE3. The ONE3 Rider drafted by F&D specifically identifies John Adcock as manager of ONE3, and not a member. Thus, F&D was aware that John Adcock was manager of ONE3, and not a member. Except as expressly admitted, paragraph 5 is denied.

6.      Defendants admit that Noble VII, LLC ("Noble") is a Mississippi limited liability company. Defendants deny that John S. Adcock is a member of Noble. The Noble Rider drafted by F&D specifically identifies John Adcock as manager of Noble, and not a member. Thus, F&D was aware that John Adcock was manager of Noble, and not a member. Except as expressly admitted, paragraph 6 is denied.

## JURISDICTION AND VENUE

7.      Paragraph 7 consists of legal conclusions; to the extent a response is required, paragraph 7 is denied.

8.      Paragraph 8 consists of legal conclusions; to the extent a response is required, paragraph 8 is denied.

9.      Paragraph 9 consists of legal conclusions; to the extent a response is required, paragraph 9 is denied.

10.    Defendants admit that Exhibit 1, pp. 1-7, is a true and correct copy of the General Agreement of Indemnity ("GAI") executed by and on behalf of John Adcock and Greater Southeast on or about August 24, 2017, and affirmatively state as follows:

    a.   The GAI attached to Plaintiff's Complaint speaks for itself and is the best evidence of its contents.

    b.   As to Adcock:

        i.   Adcock has no ownership interest in Greater Southeast (or any other Defendant entity).

        ii.   Adcock was manager of Greater Southeast, not a member.

        iii.   F&D was aware that Adcock was manager of Greater Southeast and signing in that capacity because that is what it states on the face of F&D's GAI.

        iv.   Adcock's GAI provides no benefit to Adcock.

        v.   Adcock's GAI provides no detriment to F&D.

        vi.   As to Adcock, the GAI fails for lack of consideration.

        vii.   As to Adcock, his GAI was never valid and is void or voidable.

        viii.   Plaintiff's Complaint against Adcock is due to be dismissed.

Defendants further admit that the Rider Adding Additional Indemnitor to the GAI attached to Exhibit 1, pp. 10-12, is a true and correct copy of the Rider executed by and on behalf of Colony on or about January 10, 2018 (the "Colony Rider"), some four months after the GAI was executed by Greater Southeast and Adcock, and affirmatively state as follows:

    c.   The Colony Rider attached to Plaintiff's Complaint as Exhibit 1 speaks for itself and is the best evidence of its contents.

d. The Colony Rider was not signed by Greater Southeast or Adcock, in his individual capacity, and is not binding on either.

e. As to Adcock:

    i. Adcock has no ownership interest in Colony (or any other Defendant entity).

    ii. Adcock was manager of Colony, not a member.

    iii. F&D was aware that Adcock was manager of Colony and signing in that capacity because that is what it states on the face of F&D's GAI.

    iv. The Riders and GAI provide no benefit to Adcock.

    v. The Riders and GAI provide no detriment to F&D.

    vi. As to Adcock, the Riders and GAI fail for lack of consideration.

    vii. As to Adcock, the Riders and GAI were never valid and are void or voidable.

    viii. Plaintiff's Complaint against Adcock is due to be dismissed.

f. As to Greater Southeast:

    i. Greater Southeast had no ownership interest in any Colony or any other Defendant entity (Colony, ONE3, and/or Noble).

    ii. None of the other Defendant entities had any ownership interest in Greater Southeast.

    iii. None of the other Defendant entities are "related" to each other as that term is used under the law.

    iv. To the extent F&D construes the Riders and GAI as making Greater Southeast liable for F&D's claims against Colony or any other

Defendant entity, Greater Southeast signed nothing after the original GAI, did not and would not approve, and received no consideration.

    v.  Further, there was no meeting of the minds.

    vi.  To the extent F&D construes the Riders and GAI as making Greater Southeast liable for F&D's claims against any other Defendant entity, the GAI provides no benefit to Greater Southeast.

    vii.  To the extent F&D construes the Riders and GAI as making Greater Southeast liable for F&D's claims against any other Defendant entity, the Riders and GAI provide no detriment to F&D.

    viii.  To the extent F&D construes the Riders and GAI as making Greater Southeast liable for F&D's claims against other Defendant entity, the Riders and GAI should be construed against F&D, the drafter, and declared invalid, void or voidable.

    ix.  Greater Southeast did not benefit in any way from F&D issuing bonds in favor of any of those other Defendant entities.

g.  As to Colony:

    i.  Colony had no ownership interest in any other Defendant entity (Greater Southeast, ONE3, and/or Noble).

    ii.  None of the other Defendant entities had any ownership interest in Colony.

    iii.  To the extent F&D construes the Riders and GAI as making Colony liable for F&D's claims against any other Defendant entity, Colony

signed nothing stating as such, did not approve, and received no consideration.

    iv.   Further, there was no meeting of the minds.

    v.   To the extent F&D construes the Riders and GAI as making Colony liable for F&D's claims against any other Defendant entity, the Riders and GAI provide no benefit to Colony.

    vi.   To the extent F&D is attempting to hold Colony liable for F&D's claims against any other Defendant entity, the Riders and GAI provide no detriment to F&D.

    vii.   To the extent F&D is attempting to hold Colony liable for F&D's claims against other Defendant entities, the Riders and GAI should be construed against F&D, the drafter, and declared invalid, void or voidable.

    viii.   Colony did not benefit in any way from F&D issuing bonds in favor of any of those other Defendant entities.

    ix.   The only benefit to Colony was for bonds issued in favor of Colony.

Defendants further admit that the Rider Adding Additional Indemnitor to the GAI attached to Exhibit 1, pp. 13-14, is a true and correct copy of the Rider executed by and on behalf of ONE3 on or about October 25, 2023 (the ONE3 Rider"), just under six years after the GAI was executed by Greater Southeast and Adcock, and affirmatively state as follows:

    h.  As to Adcock:

      i.   Adcock has no ownership interest in ONE3 (or any other Defendant entity).

6

ii.  Adcock was manager of ONE3, not a member.

iii.  F&D was aware that Adcock was manager of ONE3 and signing in that capacity because that is what it states on the face of F&D's Rider.

iv.  The Riders and GAI provide no benefit to Adcock.

v.  The Riders and GAI provide no detriment to F&D.

vi.  As to Adcock, the Riders and GAI fail for lack of consideration.

vii.  As to Adcock, the Riders and GAI were never valid and are void or voidable.

viii.  Plaintiff's Complaint against Adcock is due to be dismissed.

i.  As to ONE3:

i.  ONE3 had no ownership interest in any other Defendant entity (Greater Southeast, Colony, or Noble).

ii.  None of the other Defendant entities had any ownership interest in ONE3.

iii.  ONE3 had no ownership interest in any other Defendant entity (Greater Southeast, Colony, and/or Noble).

iv.  None of the other Defendant entities had any ownership interest in ONE3.

v.  To the extent F&D construes the Riders and GAI as making ONE3 liable for F&D's claims against any other Defendant entity, ONE3 signed nothing stating as such, did not approve, and received no consideration.

vi. Further, there was no meeting of the minds.

vii. To the extent F&D construes the Riders and GAI as making ONE3 liable for F&D's claims against any other Defendant entity, the Riders and GAI provide no benefit to ONE3.

viii. To the extent F&D is attempting to hold ONE3 liable for F&D's claims against any other Defendant entity, the Riders and GAI provide no detriment to F&D.

ix. To the extent F&D is attempting to hold ONE3 liable for F&D's claims against other Defendant entities, the Riders and GAI should be construed against F&D, the drafter, and declared invalid, void or voidable.

x. ONE3 did not benefit in any way from F&D issuing bonds in favor of any of those other Defendant entities.

xi. Plaintiff's Complaint against ONE3 is due to be dismissed.

Defendants further admit that Exhibit 2 is a true and correct copy of the GAI executed by and on behalf Noble, Colony, and Adcock on or around November 22, 2021 (the "Noble GAI"), roughly four years after Greater Construction and Adcock entered the GAI, and after the Colony Rider was executed by Colony, and affirmatively state as follows:

j. As to Adcock:

i. Adcock has no ownership interest in Noble (or any other Defendant entity).

ii. Adcock was manager of Noble, not a member.

  iii. F&D was aware that Adcock was manager of Noble and signing in that capacity because that is what it states on the face of F&D's Rider.

  iv. The Riders and GAI provide no benefit to Adcock.

  v. The Riders and GAI provide no detriment to F&D.

  vi. As to Adcock, the Riders and GAI fail for lack of consideration.

  vii. As to Adcock, the Riders and GAI were never valid and are void or voidable.

  viii. Plaintiff's Complaint against Adcock is due to be dismissed.

k. As to Noble:

  i. Noble had no ownership interest in any Defendant entity (Colony, Greater Southeast, or ONE3).

  ii. None of the other Defendant entities had any ownership interest in Noble.

  iii. To the extent F&D construes the Riders and GAI as making Noble liable for F&D's claims against any other Defendant entity, Noble signed nothing stating as such, did not approve, and received no consideration.

  iv. Further, there was no meeting of the minds.

  v. To the extent F&D construes the Riders and GAI as making Noble liable for F&D's claims against any other Defendant entity, the Riders and GAI provide no benefit to Noble.

vi.   To the extent F&D is attempting to hold Noble liable for F&D's claims against any other Defendant entity, the Riders and GAI provide no detriment to F&D.

vii.  To the extent F&D is attempting to hold Noble liable for F&D's claims against other Defendant entities, the Riders and GAI should be construed against F&D, the drafter, and declared invalid, void or voidable.

viii. Noble did not benefit in any way from F&D issuing bonds in favor of any of those other Defendant entities.

ix.   Plaintiff's Complaint against Noble is due to be dismissed.

Except as expressly admitted, and to the extent further response is required, paragraph 10 is denied.

11.    The GAI and Riders attached to Plaintiff's Complaint as Exhibit 1 speak for themselves and are the best evidence of their contents. Defendants expressly deny that each GAI or Rider is valid, or that each constitutes an enforceable contract. To the extent further response is required, paragraph 11 is denied.

12.    The GAI and Riders attached to Plaintiff's Complaint as Exhibit 1 speak for themselves and are the best evidence of their contents. Defendants expressly deny that each GAI or Rider is valid, or that each constitutes an enforceable contract. To the extent further response is required, paragraph 12 is denied.

13.    The GAI and Riders attached to Plaintiff's Complaint as Exhibit 1 speak for themselves and are the best evidence of their contents. Defendants expressly deny that each GAI or Rider is valid, or that each constitutes an enforceable contract. Likewise, Exhibit 3 speaks for

itself and is the best evidence of its contents. To the extent further response is required, paragraph 13 is denied.

14.    The GAI and Riders attached to Plaintiff's Complaint as Exhibit 1 speak for themselves and are the best evidence of their contents. Defendants expressly deny that each GAI or Rider is valid, or that each constitutes an enforceable contract. To the extent further response is required, paragraph 14 is denied.

## FACTUAL ALLEGATIONS

15.    This is not an allegation against Defendants. Upon information and belief, F&D is a surety company that issues payment and performance bonds and stands as a surety for select contractors. To the extent a response is required, the allegations of paragraph 15 are denied.

16.    Admitted.

17.    Denied.

## THE INDEMNITY AGREEMENTS

18.    This is not an allegation against Defendants. To the extent a response is required, the allegations of paragraph 18 are denied.

19.    The GAIs attached to Plaintiff's Complaint as Exhibit 1 speak for themselves and are the best evidence of their contents. Each Defendant expressly denies that it has any ownership interest in any other Defendant entity, or that there was consideration given for signing a GAI that F&D claims to be in favor of another Defendant entity. Defendants expressly deny that each GAI or Rider is valid, or that each constitutes an enforceable contract. To the extent further response is required, paragraph 19 is denied.

20.    The Noble GAI attached to Plaintiff's Complaint as Exhibit 2 speaks for itself and is the best evidence of its contents. Defendants expressly deny that the Noble GAI or Rider is valid,

or that it constitutes an enforceable contract. To the extent further response is required, paragraph 20 is denied.

21.    The GAIs and the Noble GAI attached to Plaintiff's Complaint as Exhibit 1 and Exhibit 2 speak for themselves and are the best evidence of their contents. Defendants expressly deny that each GAI or Rider is valid, or that each constitutes an enforceable contract. To the extent further response is required, paragraph 21 is denied.

22.    The GAIs and the Noble GAI attached to Plaintiff's Complaint as Exhibit 1 and Exhibit 2 speak for themselves and are the best evidence of their contents. Defendants expressly deny that each GAI or Rider is valid, or that each constitutes an enforceable contract. To the extent further response is required, paragraph 22 is denied.

23.    The GAIs attached to Plaintiff's Complaint as Exhibit 1 speak for themselves and are the best evidence of their contents. Defendants expressly deny that each GAI or Rider is valid, or that each constitutes an enforceable contract. To the extent further response is required, paragraph 23 is denied.

24.    The GAIs attached to Plaintiff's Complaint as Exhibit 1 speak for themselves and are the best evidence of their contents. Defendants expressly deny that each GAI or Rider is valid, or that each constitutes an enforceable contract. To the extent further response is required, paragraph 24 is denied.

25.    The GAIs attached to Plaintiff's Complaint as Exhibit 1 speak for themselves and are the best evidence of their contents. Defendants expressly deny that each GAI or Rider is valid, or that each constitutes an enforceable contract. To the extent further response is required, paragraph 25 is denied.

26.     The GAIs attached to Plaintiff's Complaint as Exhibit 1 speak for themselves and are the best evidence of their contents. Defendants expressly deny that each GAI or Rider is valid, or that each constitutes an enforceable contract. To the extent further response is required, paragraph 26 is denied.

27.     The GAIs attached to Plaintiff's Complaint as Exhibit 1 speak for themselves and are the best evidence of their contents. Defendants expressly deny that each GAI or Rider is valid, or that each constitutes an enforceable contract. To the extent further response is required, paragraph 27 is denied.

### THE PROJECTS AND THE CLAIMS MADE UNDER THE PAYMENT AND PERFORMANCE BONDS

28.     Defendants admit that following the execution of the GAIs and the Noble GAI, Colony and the Indemnitors entered into multiple contracts for certain projects throughout Mississippi and Alabama. To the extent further response is required, paragraph 28 is denied.

29.     This is not an allegation against Defendants. To the extent a response is required, the allegations of paragraph 29 are denied.

**A.  Ventura Drive Project**

30.     Defendants admit that Colony contracted with the City of Lucedale, Mississippi for the construction of the Ventura Drive Roadway Improvement Project. To the extent further response is required, paragraph 30 is denied.

31.     Denied.

32.     Denied.

33.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 33, and therefore, denies the same.

34.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 34, and therefore, denies the same.

**B.  Temple Baptist Church Project**

35.     Defendants admit that Colony contracted with Temple Baptist Church to complete the Temple Baptist Church Parking Lot Improvement Project. To the extent further response is required, paragraph 35 is denied.

36.     Denied.

37.     Denied.

38.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 38, and therefore, denies the same.

39.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 39, and therefore, denies the same.

40.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 40, and therefore, denies the same.

**C.  Splash Pad Project**

41.     Defendants admit that Colony contracted with the Town of Richton for the Splash Pad Project. To the extent further response is required, paragraph 41 is denied.

42.     Denied.

43.     Denied.

44.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 44, and therefore, denies the same.

45.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 45, and therefore, denies the same.

46.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in the first sentence of paragraph 46, and therefore, denies the same. The second sentence of paragraph 46 consists of a legal conclusion; to the extent a response is required, the second sentence of paragraph 46 is denied.

### D.  Popp's Ferry Road Relocation Project

47.    Defendants admit that Colony contracted with the City of D'Iberville for the project entitled Popp's Ferry Road Relocation Federal Aid Project. To the extent further response is required, paragraph 47 is denied.

48.    Denied.

49.    Denied.

50.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 50, and therefore, denies the same.

51.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 51, and therefore, denies the same.

### E.  Midtown Green Project

52.    Defendants admit that Colony contracted with the City of Hattiesburg, Mississippi for the project entitled Midtown Green. To the extent further response is required, paragraph 52 is denied.

53.    Denied.

54.    Denied.

55.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 55, and therefore, denies the same.

15

56.    Denied as stated. The letter, attached to the Complaint as Exhibit 7, speaks for itself, and it is the best evidence of its contents. Except as expressly admitted, paragraph 56 is denied.

57.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 57, and therefore, denies the same.

**F.  Hall Avenue Roundabout Project**

58.    Defendants admit that Colony contracted with Hattiesburg for the project entitled Hall Avenue Roundabout. To the extent further response is required, paragraph 58 is denied.

59.    Denied.

60.    Denied as stated. The letter, attached to the Complaint as Exhibit 8, speaks for itself, and it is the best evidence of its contents. Except as expressly admitted, paragraph 60 is denied.

61.    Denied.

62.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 62, and therefore, denies the same.

63.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 63, and therefore, denies the same.

**G.  16th Avenue Project**

64.    Defendants admit that Colony contracted with Hattiesburg for the project entitled 16th Avenue and Concart Street Improvements. To the extent further response is required, paragraph 64 is denied.

65.    Denied.

66.    Denied as stated. The letter, attached to the Complaint as Exhibit 9, speaks for itself, and it is the best evidence of its contents. Except as expressly admitted, paragraph 66 is denied.

67.    Denied.

68.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 68, and therefore, denies the same.

**H.  LED Lighting Project**

69.    Defendants admit that ONE3 contracted with Jones County School District for the project entitled Jones County School District Athletic Field LED Lighting, South Jones High School, Northeast Jones High School and West Jones High School. To the extent further response is required, paragraph 69 is denied.

70.    Denied.

71.    Denied as stated. The letter, attached to the Complaint as Exhibit 10, speaks for itself, and it is the best evidence of its contents. Except as expressly admitted, paragraph 71 is denied.

72.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 72, and therefore, denies the same.

73.    Denied.

74.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 74, and therefore, denies the same.

75.    Denied as stated. The letter, attached to the Complaint as Exhibit 11, speaks for itself, and it is the best evidence of its contents. Except as expressly admitted, paragraph 75 is denied.

76.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 76, and therefore, denies the same.

**I.  Hinds Dorm Project**

77.    Defendants admit that Colony contracted with Hinds County Community College District for the project entitled HEERF – New Residential Hall – Utica Campus. To the extent further response is required, paragraph 77 is denied.

78.    Denied.

79.    Denied as stated. The letter, attached to the Complaint as Exhibit 12, speaks for itself, and it is the best evidence of its contents. Except as expressly admitted, paragraph 79 is denied.

80.    Denied.

81.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 81, and therefore, denies the same.

82.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 82, and therefore, denies the same.

**J.  Civic Center Project**

83.    Defendants admit that Colony contracted with the City of Collins, Mississippi for the project entitled Civic Center Drainage Rehabilitation Phase 2. To the extent further response is required, paragraph 83 is denied.

84.    Denied.

85.    Denied.

86.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 86, and therefore, denies the same.

87.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 87, and therefore, denies the same.

18

### K.  South Forrest Attendance Center Project

88.    Defendants admit that Colony contracted with the Forrest County School District for the project entitled South Forrest Attendance Center. To the extent further response is required, paragraph 88 is denied.

89.    Denied.

90.    Denied as stated. The letter, attached to the Complaint as Exhibit 13, speaks for itself, and it is the best evidence of its contents. Except as expressly admitted, paragraph 90 is denied.

91.    Denied.

92.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 92, and therefore, denies the same.

93.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 93, and therefore, denies the same.

### L.  Forrest Avenue Pedestrian Plaza Project

94.    Defendants admit that Colony contracted with the University of Southern Mississippi for the project entitled Forrest Avenue Pedestrian Plaza Project. To the extent further response is required, paragraph 94 is denied.

95.    Denied.

96.    Denied.

97.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 97, and therefore, denies the same.

98.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 98, and therefore, denies the same.

**M. Earl Travillion Attendance Center Project**

99.    Defendants admit that Colony contracted with the Forrest County School District for the project entitled Earl Travillion Attendance Center. To the extent further response is required, paragraph 99 is denied.

100.    Denied.

101.    Denied as stated. The letter, attached to the Complaint as Exhibit 13, speaks for itself, and it is the best evidence of its contents. Except as expressly admitted, paragraph 101 is denied.

102.    Denied.

103.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 103, and therefore, denies the same.

104.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 104, and therefore, denies the same.

**N.  Substation Project**

105.    Defendants admit that Colony contracted with the Bureau of Buildings, Grounds, and Real Property Management of the State of Mississippi for the project entitled the Substation Project. To the extent further response is required, paragraph 105 is denied.

106.    Denied.

107.    Denied.

108.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 108, and therefore, denies the same.

109.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 109, and therefore, denies the same.

### O.  Columbia Courthouse Square Project

110.    Defendants admit that Colony contracted with the Marion County Board of Supervisors for the project entitled Columbia Courthouse Square. To the extent further response is required, paragraph 110 is denied.

111.    Denied.

112.    Denied.

113.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 113, and therefore, denies the same.

114.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 114, and therefore, denies the same.

### P.  Noble Project

115.    Defendants admit that Noble VII contracted with the City of Daphne for the project entitled Noble. To the extent further response is required, paragraph 115 is denied.

116.    Denied.

117.    Denied.

118.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 118, and therefore, denies the same.

### Q.  Black Creed Road Project

119.    Defendants admit that Colony contracted with the Marion County Board of Supervisors for the project entitled Black Creek Road. To the extent further response is required, paragraph 119 is denied.

120.    Denied.

121.    Denied.

122.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 122, and therefore, denies the same.

**R.  Amite Elementary School Project**

123.     Defendants admit that Colony contracted with the Amite County School District for the project entitled 22045 Amite County Elementary School. To the extent further response is required, paragraph 123 is denied.

124.     Denied.

125.     Denied.

126.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 126, and therefore, denies the same.

127.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 127, and therefore, denies the same.

**PERFORMANCE AND PAYMENT BONDS CLAIMS**

128.     Denied.

129.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 129, and therefore, denies the same.

130.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 130, and therefore, denies the same.

131.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 131, and therefore, denies the same.

132.     Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 132, and therefore, denies the same.

### THE INDEMNITORS FAIL TO MEET THEIR OBLIGATIONS UNDER THE INDEMNITY AGREEMENTS

133.    Admitted.

134.    Denied.

135.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 135, and therefore, denies the same.

136.    Denied. Responding further, The GAI and Riders attached to Plaintiff's Complaint as Exhibit 1 speak for themselves and are the best evidence of their contents. Defendants expressly deny that each GAI or Rider is valid, or that each constitutes an enforceable contract. To the extent further response is required, paragraph 136 is denied.

137.    Denied.

138.    Denied.

### F&D FACES SIGNIFICANT EXPOSURE IN LIGHT OF THE PERFORMANCE BOND CLAIMS

139.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 139, and therefore, denies the same.

140.    Denied.

141.    Paragraph 141 consists of legal conclusions; to the extent a response is required, paragraph 141 is denied.

142.    Paragraph 142 consists of legal conclusions; to the extent a response is required, paragraph 142 is denied.

143.    This is not an allegation against Defendants. To the extent a response is required, the allegations of paragraph 143 are denied, and strict proof is required thereof.

**F&D'S COLLATERAL DEMAND**

144.    Admitted.

145.    This is not an allegation against Defendants. To the extent a response is required, the allegations of paragraph 145 are denied, and strict proof is required thereof. Responding further, F&D's collateral demand letter, attached to its Complaint as Exhibit 14, speaks for itself, and it is the best evidence of its contents. Except as expressly admitted, paragraph 145 is denied.

146.    This is not an allegation against Defendants. To the extent a response is required, the allegations of paragraph 146 are denied, and strict proof is required thereof. Responding further, F&D's collateral demand letter, attached to its Complaint as Exhibit 14, speaks for itself, and it is the best evidence of its contents. Except as expressly admitted, paragraph 146 is denied.

147.    This is not an allegation against Defendants. To the extent a response is required, the allegations of paragraph 147 are denied, and strict proof is required thereof. Responding further, F&D's collateral demand letter, attached to its Complaint as Exhibit 14, speaks for itself, and it is the best evidence of its contents. Except as expressly admitted, paragraph 147 is denied.

148.    Denied as stated.

149.    Denied as stated.

**IV.**
**CLAIMS FOR RELIEF**

150.    Denied as stated.

151.    Denied as stated.

152.    This is not an allegation against Defendants. To the extent a response is required, the allegations of paragraph 152 are denied, and strict proof is required thereof.

## COUNT I
## CONTRACTUAL INDEMNIFICATION AND EXONERATION

153.    Defendants reincorporate by reference their responses and defenses set forth in their Answer and Affirmative Defenses.

154.    Paragraph 154 consists of legal conclusions; to the extent a response is required, paragraph 154 is denied.

155.    Denied.

156.    Denied.

157.    Paragraph 157 consists of legal conclusions; to the extent a response is required, paragraph 157 is denied.

158.    Paragraph 158 is a legal argument. To the extent that a response is required, denied.

## COUNT II
## SPECIFIC PERFORMANCE OF COLLATERAL SECURITY OBLIGATIONS

159.    Defendants reincorporate by reference their responses and defenses set forth in their Answer and Affirmative Defenses.

160.    The Indemnity Agreement speaks for itself, and is the best evidence of its contents, and must be read as a whole. Except as expressly admitted, paragraph 160 is denied.

161.    Defendants admit that F&D sent a Collateral Demand Letter, which is attached to Plaintiff's Complaint as Exhibit 14. Except as expressly admitted, paragraph 161 is denied.

162.    Denied as stated. The Collateral Demand Letter, which is attached to Plaintiff's Complaint as Exhibit 14, speaks for itself, and is the best evidence of its contents, and must be read as a whole. Except as expressly admitted, paragraph 162 is denied.

163.    Denied.

25

164.    Paragraph 164 consists of legal conclusions; to the extent a response is required, paragraph 164 is denied.

165.    Defendants deny the allegation that they have failed to take any reasonable measures to mitigate any possible damages in this case. Additionally, the last sentence of paragraph 165 is a legal argument. To the extent that a response is required, denied. Except as expressly admitted, paragraph 165 is denied.

166.    Denied.

167.    Paragraph 167 consists of legal conclusions; to the extend a response is required, paragraph 167 is denied.

168.    Paragraph 168 is a legal argument and/or legal conclusion. To the extent a response is required, paragraph 168 is denied.

169.    The Indemnity Agreement speaks for itself, and is the best evidence of its contents, and must be read as a whole. Except as expressly admitted, paragraph 169 is denied.

170.    Paragraph 170 consists of legal conclusions; to the extent a response is required, paragraph 170 is denied.

## <u>COUNT III</u>
## SPECIFIC PERFORMANCE OF BOOKS AND RECORDS OBLIGATIONS

171.    Defendants reincorporate by reference their responses and defenses set forth in their Answer and Affirmative Defenses.

172.    The Indemnity Agreement speaks for itself, and is the best evidence of its contents, and must be read as a whole. Except as expressly admitted, paragraph 172 is denied.

173.    The Indemnity Agreement speaks for itself, and is the best evidence of its contents, and must be read as a whole. Except as expressly admitted, paragraph 173 is denied.

174.    Denied.

175.    Paragraph 175 consists of legal conclusions; to the extent a response is required, paragraph 175 is denied.

## <u>COUNT IV</u>
## APPLICATION FOR PRELIMINARY INJUNCTION

176.    Defendants reincorporate by reference their responses and defenses set forth in their Answer and Affirmative Defenses.

177.    This is not an allegation against Defendants. To the extent a response is required, the allegations of paragraph 177 are denied, and strict proof is required thereof.

178.    This is not an allegation against Defendants. To the extent a response is required, the allegations of paragraph 178 are denied, and strict proof is required thereof.

179.    This is not an allegation against Defendants. To the extent a response is required, the allegations of paragraph 179 are denied, and strict proof is required thereof.

180.    Paragraph 180 consists of legal conclusions; to the extent a response is required, paragraph 180 is denied.

181.    Paragraph 181 consists of legal conclusions; to the extent a response is required, paragraph 181 is denied.

182.    Paragraph 182 consists of legal conclusions; to the extent a response is required, paragraph 182 is denied.

183.    Denied as stated.

184.    Denied as stated.

185.    Paragraph 185 consists of legal conclusions; to the extent a response is required, paragraph 185 is denied.

186.    Paragraph 186 consists of legal conclusions; to the extent a response is required, paragraph 186 is denied.

187.    Paragraph 187 consists of legal conclusions; to the extent a response is required, paragraph 187 is denied.

188.    Paragraph 188 consists of legal conclusions; to the extent a response is required, paragraph 188 is denied.

189.    Paragraph 189 is a legal argument and consists of legal conclusions. To the extent further response is required, paragraph 189 is denied.

190.    Paragraph 190 is a legal argument and consists of legal conclusions. To the extent further response is required, paragraph 190 is denied.

191.    Paragraph 191 is a legal argument and consists of legal conclusions. To the extent further response is required, paragraph 191 is denied.

192.    Paragraph 192 is a legal argument and consists of legal conclusions. To the extent further response is required, paragraph 192 is denied.

193.    Denied.

194.    Paragraph 194 is a legal argument and consists of legal conclusions. To the extent further response is required, paragraph 194 is denied.

195.    This is not an allegation against Defendants. To the extent a response is required, the allegations of paragraph 195 are denied, and strict proof is required thereof.

196.    This is not an allegation against Defendants. To the extent a response is required, the allegations of paragraph 196 are denied, and strict proof is required thereof.

**COUNT V**
**APPLICATION FOR PERMANENT INJUNCTION**

197.    Defendants reincorporate by reference their responses and defenses set forth in their Answer and Affirmative Defenses.

198.    This is not an allegation against Defendants. To the extent a response is required, the allegations of paragraph 198 are denied, and strict proof is required thereof.

199.    Paragraph 199 is a legal argument and consists of legal conclusions. To the extent further response is required, paragraph 199 is denied.

200.    Paragraph 200 is a legal argument and consists of legal conclusions. To the extent further response is required, paragraph 200 is denied.

201.    Denied as stated.

202.    Paragraph 202 is a legal argument and consists of legal conclusions. To the extent further response is required, paragraph 202 is denied.

203.    Paragraph 203 is a legal argument and consists of legal conclusions. To the extent further response is required, paragraph 203 is denied.

204.    Paragraph 204 is a legal conclusion; to the extent a response is required, paragraph 204 is denied.

205.    Paragraph 205 is a legal argument and consists of legal conclusions. To the extent further response is required, paragraph 205 is denied.

206.    Denied as stated.

207.    Paragraph 207 is a legal argument and consists of legal conclusions. To the extent further response is required, paragraph 207 is denied.

208.    Paragraph 208 is a legal argument and consists of legal conclusions. To the extent further response is required, paragraph 208 is denied.

## COUNT VI
## TEMPORARY RESTRAINING ORDER

209.    Defendants reincorporate by reference their responses and defenses set forth in their Answer and Affirmative Defenses.

210.    This is not an allegation against Defendants. To the extent a response is required, the allegations of paragraph 210 are denied, and strict proof is required thereof. Responding further, the UCC Financing Statement, which is attached to Plaintiff's Complaint as Exhibit 15, speaks for itself, and is the best evidence of its contents, and must be read as a whole. Except as expressly admitted, paragraph 210 is denied.

211.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 211, and therefore, paragraph 211 is denied.

212.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 212, and therefore, paragraph 212 is denied.

213.    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 213, and therefore, paragraph 213 is denied.

214.    Denied.

215.    Paragraph 215 is a legal argument and consists of legal conclusions. To the extent further response is required, paragraph 215 is denied.

216.    Denied.

217.    Paragraph 217 is a legal argument and consists of legal conclusions. To the extent further response is required, paragraph 217 is denied.

218.    Paragraph 218 is a legal argument and consists of legal conclusions. To the extent further response is required, paragraph 218 is denied.

F&D's demands and/or prayer for relief is denied. Defendants deny the allegations contained in the unnumbered paragraph beginning with "WHEREFORE," (which follows Paragraph 218 of the Plaintiff's Complaint). Defendant denies that F&D is entitled to any judgment

or relief in its favor pursuant to the Plaintiff's Complaint. Any allegations contained in the complaint that are not expressly admitted in the paragraphs above are denied.

## **AFFIRMATIVE DEFENSES**

1. Plaintiff's Complaint fails for lack of subject matter jurisdiction.

2. Plaintiff's Complaint claims and/or causes of action fail to state a claim upon which relief may be granted.

3. Plaintiff's Complaint fails in whole or in part because F&D failed to require compliance with specific procedures, such as notice and termination procedures, to trigger F&D's obligations. F&D's obligation to pay damages is only triggered if the beneficiary follows the notice and termination procedures outlined in the bond. To the extent Defendants had any obligation to pay damages, it is only triggered if the surety F&D is obligated to pay.

4. Plaintiff's Complaint fails in whole or in part because, to be enforceable, the bond must be signed by the surety or its principal. This is a fundamental requirement for the bond to be enforceable.

5. Plaintiff's Complaint fails in whole or in part Plaintiff breached its GAI, Rider, and/or bond agreements with each Defendant, and acted negligently and/or recklessly in paying claims that Defendants were not obligated to pay.

6. Plaintiff's Complaint fails in whole or in part because one or more of the GAIs or Riders attached to Plaintiff's Complaint are invalid, and do not constitute enforceable contracts.

7. Plaintiff's Complaint fails in whole or in part because one or more of the bonds attached to Plaintiff's Complaint are invalid, and do not constitute enforceable contracts.

8. Plaintiff's Complaint fails in whole or in part based upon the statute of frauds.

9.      Plaintiff's Complaint fails in whole or in part because a surety cannot recover on an indemnity agreement if the bonds are not issued by a resident appointed agent with a certificate of authority to transact insurance business in Mississippi for a foreign insurer. Mississippi Code Annotated section 83–17–75 (Supp.2009); Miss.Code Ann. § 83–21–1 (Rev. 1999).

10.     Plaintiff's Complaint fails in whole or in part because one or more of the bonds are unsigned by the principal and are unenforceable, invalid, void, and/or voidable.

11.     Plaintiff's Complaint fails in whole or in part because one or more of the payment and performance bonds are not signed by the surety. Further, one or more of the payment and performance bonds are not signed by a witness. One or more of the payment and performance bonds lack the required corporate resolution verifying resident agent authority. The bonds are, therefore, invalid, void, or voidable.

12.     Plaintiff's Complaint fails against one or more of Defendants Greater Southeast Construction, LLC, Noble VII, LLC, ONE3 Electric, LLC, and John W. Adcock for lack of consideration. Adcock has no ownership interest in any Defendant entity. None of these Defendant entities have any ownership interest in the other. There was no benefit to the Defendant(s) signing the Riders and GAI, and no detriment to Plaintiff surety F&D.

13.     Plaintiff's Complaint fails in whole or in part because unsigned bonds are incomplete, without binding obligation on either.

14.     Plaintiff's Complaint fails in whole or in part because Plaintiff surety breached the duty of good faith and fair dealing implied in every contract.

15.     Plaintiff surety did not pay claims in good faith.

16.     Plaintiff surety failed to mitigate damages.

17.    Plaintiff surety is not entitled to reimbursement because the surety's payments were unauthorized and expressly objected to by the principal Defendant.

18.    Plaintiff surety is not entitled to reimbursement because the owners, or one or more of them, were the first to materially breach their respective construction contract(s), entitling the respective Defendant to delay damages, prompt payment, additional compensation, and other damages for breaches and negligence that meet or exceed the amounts paid to the owner(s) by Plaintiff surety.

19.    Plaintiff surety is not entitled to reimbursement because certain subcontractors were the first to materially breach their respective construction subcontract(s), entitling the respective Defendant to back-charges, delay damages, additional compensation, and other damages for breaches and negligence that meet or exceed the amounts paid to the owner(s) by Plaintiff surety.

20.    Plaintiff surety is not entitled to reimbursement for payment bond claims because payment was not yet due to subcontractors.

21.    Plaintiff's Complaint fails in whole or in part because pay-when-paid and pay-if-paid clauses require payment from the owner as a condition precedent to payment from the Defendant contractor.

22.    Plaintiff surety is not entitled to reimbursement because the surety's payments were not reasonable.

23.    Plaintiff's Complaint fails in whole or in part because Plaintiff surety was the first to breach.

24.    Plaintiff's Complaint fails in whole or in part based upon the doctrine of unclean hands.

25.    Plaintiff's Complaint fails in whole or in part based upon the doctrine of abandonment.

26.    Plaintiff's Complaint fails in whole or in part based upon the doctrine of laches.

27.    Plaintiff surety relinquished rights. Plaintiff's Complaint fails in whole or in part based upon the doctrine of waiver.

28.    Plaintiff surety made implicit or explicit assurances to the Defendant that induced reliance.

29.    Plaintiff's Complaint fails in whole or in part based upon the doctrine of estoppel.

30.    Plaintiff's Complaint fails in whole or in part based upon the doctrine of acquiescence.

31.    Defendants reserve the right to alter, amend, and/or otherwise supplement this Answer with additional affirmative defenses where and if such information is ascertained through discovery or other means during this case.

## COUNTER-COMPLAINT

Counter-Plaintiffs John W. Adcock and Colony Construction, LLC, pursuant to Rule 13 of the Federal Rules of Civil Procedure, file this their Counter-Complaint against Fidelity and Deposit Company of Maryland, and state as follows:

## PARTIES

1.    Counter-Plaintiff John W. Adcock is an adult resident of Hattiesburg, Mississippi.

2.    Counter-Plaintiff Colony Construction, LLC is a limited liability company organized and existing under the laws of Mississippi.

3.     Upon information and belief, Counter-Defendant Fidelity and Deposit Company of Maryland ("F&D") is an Illinois corporation engaged in the insurance business. F&D is authorized to transact business and has transacted business within the State of Mississippi.

## JURISDICTION AND VENUE

4.     This Court has supplemental jurisdiction over Counter-Plaintiffs related state and common law claims pursuant to 28 U.S.C. § 1367.

## FACTUAL ALLEGATIONS

5.     Greater Southeast Construction, LLC ("Greater Southeast") was created in 2013.

6.     Greater Southeast is owned by the Adcock Family Limited Partnership, a Mississippi limited partnership.

7.     For many years, Greater Southeast had great success as a construction general contractor.

### F&D SOLICITS THE BONDING BUSINESS OF GREATER SOUTHEAST

8.     F&D a/k/a Zurich began soliciting the business of Greater Southeast for bonding—specifically, bid bonds and performance and payment bonds.

9.     On or about August 24, 2017, Greater Southeast signed a General Indemnity Agreement ("GAI") with F&D. A true and correct copy of the GAI is attached as Exhibit 1 to the F&D Complaint, pp. 1-7.

10.     At the beginning, Greater Southeast established and maintained a good relationship with its surety company, F&D a/k/a Zurich.

11.     In return, F&D was paid handsomely by Greater Southeast for the bids issued by F&D and profited for many years.

## THOUGH JOHN ADCOCK WAS NOT AN OWNER OF GREATER SOUTHEAST, F&D REQUIRED HIS PERSONAL INDEMNIFICATION, WITHOUT CONSIDERATION

12.     Greater Southeast is <u>not</u> owned in whole or in part by John Adcock.

13.     John Adcock is manager of Greater Southeast, not a member.

14.     F&D was aware that John Adcock was manager of Greater Southeast, not a member.

15.     The GAI drafted by F&D identifies John Adcock as manager, not as a member.

16.     F&D was aware that Adcock was manager of Greater Southeast and signing in that capacity because that is what it states on the face of F&D's GAI.

17.     Nevertheless, F&D required John Adcock to sign a personal GAI even though Adcock was manager and had no ownership interest in Greater Southeast.

18.     Thus, at F&D's insistence, on or about August 24, 2017, John Adcock signed a personal GAI with F&D.

19.     No payment or other consideration was provided to Adcock for entering the GAI or otherwise guaranteeing the debts/obligations of Greater Southeast (or any other entity subject to the GAI).

20.     Adcock did not receive any benefit to executing the GAI—only detriment.

21.     Conversely, there was no detriment to F&D in entering into the GAI—only benefit.

## F&D SOLICITS THE BONDING BUSINESS OF COLONY CONSTRUCTION

22.     Colony Construction, LLC ("Colony") was created on November 3, 2017.

23.     Adcock is the manager of Colony, not a member.

24.     Colony is owned by Colony Group Holdings, LLC, a Mississippi limited liability company formed on that same date of November 3, 2017.

25.     F&D a/k/a Zurich began soliciting the business of Colony for bonding—specifically, bid bonds and performance and payment bonds.

26.     For reasons known only to F&D, F&D did not enter into a new General Indemnity Agreement with Colony.

27.     Rather, on or about January 10, 2018, some four months after the GAI was executed by Greater Southeast and Adcock, Colony executed a Rider Adding Additional Indemnitor to the GAI (the "Colony Additional Indemnitor Rider").

28.     At the time that Colony was required by F&D to be added as an Additional Indemnitor, Colony had no ownership interest in Greater Southeast (nor other entity).

29.     No payment or other consideration was provided to Colony for entering the Colony Additional Indemnitor Rider or otherwise guaranteeing the debts/obligations of Greater Southeast.

30.     At the time of its signing, Colony Construction did not receive any benefit to executing the Colony Additional Indemnitor Rider in favor of Greater Southeast—only detriment.

31.     Conversely, there was no detriment to F&D in entering into the Colony Additional Indemnitor Rider—only benefit.

**JOHN ADCOCK WAS NOT AN OWNER OF COLONY CONSTRUCTION, AND DID NOT SIGN THE COLONY ADDITIONAL INDEMNITORY RIDER IN HIS PERSONAL CAPACITY**

32.     Colony is <u>not</u> owned in whole or in part by John Adcock.

33.     John Adcock is manager of Colony, not a member.

34.     F&D was aware that John Adcock was manager of Colony, not a member.

35.     The GAI drafted by F&D identifies John Adcock as manager of Colony, not as a member.

36.     F&D was aware that Adcock was manager of Colony and signing in that capacity, and not personally, because that is what it states on the face of F&D's Colony Additional Indemnitor Rider.

**COLONY CONSTRUCTION DOES BUSINESS WITH F&D**

37.     As with Greater Southeast, from its beginning in 2017, Colony established and maintained a good relationship with its surety company, F&D a/k/a Zurich.

38.     Colony's construction business continued to grow.

39.     In return, F&D was paid handsomely by Colony for the bids issued by F&D and profited for many years.

40.     In 2019, Colony was awarded and began construction on a $13 million new dormitory project for Pearl River Community College.

41.     Disagreements between the mechanical engineer and JEM Mechanical, the mechanical contractor, lead to a two-year delay in final sign-off by the owner.

42.     JEM Mechanical submitted a payment bond claim against the F&D payment bond.

43.     Colony denied that any payment was owed.

44.     F&D did not pay JEM Mechanical for its unsubstantiated claim.

45.     That was the first and only time that F&D sided with Colony after receiving a payment bond claim or performance bond claim.

46.     During the COVID-19 pandemic, Colony faced challenges related to subcontractors, staffing, and materials, but resolved issues satisfactorily without any claim payments from F&D.

47.    By mid/late 2022, Colony was growing, and successfully closing out projects while starting new projects, including civil/infrastructure work.

48.    Colony began work on a $2 million roundabout project in downtown Hattiesburg in 2022.

49.    In late 2022, Colony expanded its team, adding experienced personnel, including the former City engineer of Hattiesburg to lead the civil department.

50.    In 2023, Colony notified its concrete subcontractor that it was in default, and subsequently terminated its concrete subcontractor on the City of Hattiesburg roundabout project, for cause, due to substandard work.

51.    In December 2023, Colony went approximately 100 days without receiving payment on any of its projects.

52.    The City of Hattiesburg roundabout project experienced delays, and a new subcontractor started working for Colony Construction in early 2024.

53.    Additional challenges on the City of Hattiesburg roundabout project included owner-initiated design changes, as well as delays from another contractor on a nearby project, which were beyond Colony Construction's control.

54.    Colony Construction had to work for several months on a project without payment due to the City of Hattiesburg withholding for its claim of liquidated damages.

55.    In early 2024, Colony Construction received a notice of default from the City of Hattiesburg warning that the project was behind schedule, and that Colony Construction was at risk for termination.

56.    Meanwhile, Colony also went approximately three months without payment on the Hinds Community College dorm project, leading to subcontractors pulling off the job.

57.     Colony began receiving letters about project delays.

58.     This raised concerns with its surety F&D.

59.     A letter was sent to F&D from the owner representative of the Hinds Community College dormitory job expressing concern about subcontractors not being on the job.

60.     After receiving the letter from Hinds Community College, F&D turned against Colony.

61.     F&D accused Colony of withholding information and demanded a third-party audit.

62.     In March 2024, a team of representatives from F&D flew into Hattiesburg to investigate Colony and its projects.

63.     Colony was unable to pay its largest subcontractor a significant bill due to nonpayment by the City of Hattiesburg.

64.     Colony thereafter received termination notice on the City of Hattiesburg roundabout project.

65.     A social media post in March 2024 about Colony Construction's termination notice on the City of Hattiesburg roundabout project caused concern among banks.

66.     One of Colony's lender banks instituted an immediate withdrawal of $250,000 from a Colony account.

67.     F&D originally indicated willingness to provide financial assistance to Colony to complete the Hinds Community College dormitory project.

68.     F&D determined that it would not assist Colony financially.

69.     F&D's liability on the performance bonds do not arise until there has been a default by the principal and the owner has terminated the contract pursuant to the terms contained therein.

70.     F&D failed and refused to assist Colony against performance and payment bond claims.

71.     F&D's obligations were not triggered due to the obligee's failure to comply with preconditions set forth in the bond, such as notice and termination procedures.

72.     Further, certain obligee's (owners and subcontractors) actions adversely affected Colony's interests.

73.     Moreover, certain obligee's (owners and subcontractors) failed to perform their obligations under the construction contract.

74.     But instead of defending claims against performance and payment bonds, as it was contractually obligated to do, F&D pressured Colony to close its doors, voluntarily default, and abandon its projects.

75.     F&D did so because its representative expressed their belief that F&D could pay the disputed claims to owners, subcontractors, and suppliers because Colony's owner John Adcock had enough assets to recoup any losses or claims F&D paid.

76.     As a result of F&D's breaches, acts and omissions, and negligent and/or recklessness, Colony was forced to sell assets at or below debt to pay creditors and lenders, and shutter its business.

## COUNT I
## DECLARATORY JUDGMENT

77.     Defendants incorporate and reallege all the proceeding allegations as if fully set forth herein, including those contained in their Answer and Affirmative Defenses.

78.     Rule 57 of the Mississippi Rules of Civil Procedure creates a procedure by which the rights and obligations of the parties may be adjudicated in cases involving an actual controversy

41

"that has not yet reached the stage at which either party may seek a coercive remedy, or in which the party entitled to such a remedy fails to sue for it." M.R.C.P. 57 cmt.

79.    "The two principal criteria in favor of rendering declaratory judgments are: (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Titan Indem. Co. v. Williams*, 743 So. 2d 1020, 1023 (Miss. Ct. App. 1999) *see also White v. Gautier Utility Dist.,* 465 So.2d 1003, 1014 (Miss. 1985) ("[a]mong the cases where a proceeding for declaratory judgment is most needed are those where there exists an actual dispute with respect to which the parties have a compelling need to know where they stand").

80.    John W. Adcock is entitled to declaratory judgment finding that the "General Indemnity Agreement" at issue, attached to Plaintiff's Complaint, is void as a matter of law for lack of consideration.

81.    To begin, and to state the obvious, surety companies issue bonds for construction companies. The bonds are not issued to the owners, but rather to the licensed construction company as principals.

82.    Therefore, any individuals entering into an indemnity agreement for the benefit of a surety such as F&D must receive consideration.

83.    For an individual who is an owner of a construction company, for example, the consideration is self-evident.

84.    The owner's construction company receives the benefit and, as owner, the owner receives the direct benefit of that transaction.

85.    The same cannot be said for non-owners.

86.    F&D knew or should have known that Adcock is not an owner of Colony, or any of the Defendant entities.

87.    The General Indemnity Agreement expressly identifies Adcock as manager of Greater Southeast.

88.    Likewise, the Colony Additional Indemnitor Rider expressly identifies Adcock as manager of Colony.

89.    The General Indemnity Agreement does not identify John Adcock as an owner of Greater Southeast.

90.    That is because Adcock was not an owner of Greater Southeast. Neither is he an owner of Colony.

91.    "The elements of a valid contract are: (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, (6) no legal prohibition precluding contract formation." *Rotenberry v. Hooker*, 864 So.2d 266, 270 (Miss. 2003).

92.    "A contract is unenforceable if the material terms are not sufficiently definite." *Id.*

93.    Under Mississippi law, a contract is generally void for lack of consideration when there is no benefit to the promisor or detriment to the promisee.

94.    "The Mississippi Supreme Court has defined consideration for a promise as (a) an act other than a promise, or (b) a forbearance, or (c) the creation, modification or destruction of a legal relation, or (d) a return promise, bargained for and given in exchange for the promise. *Quick v. McIntosh*, 294 So. 3d 1196 (Miss. Ct. App. 2019) (*quoting Marshall Durbin Food Corp.*, 909 So. 2d at 1273 (¶14) (citation and internal quotation marks omitted)."

95.    In short, a contract is void when the promisor owes an obligation to the promisee, but the promisee owes nothing to the promissor. *See, e.g., Lagniappe Logistics, Inc. v. Buras*, 199 So. 3d 675 (Miss. 2016).

96.    The GAI has *no benefit* for Adcock.

97.    Likewise, there is *no detriment* to the Plaintiff.

98.    The element of consideration is wholly lacking.

99.    Adcock owes no indemnification or duties to Plaintiff.

100.    Consideration is a material term of every contract. It must be bargained for. *See Buras*, 199 So. 3d at 677 ("And because the failure to bargain for consideration precludes contract formation in the first instance, no contract ever existed to rescind or cancel, and no cause of action existed upon which the statute of limitations could have run.").

101.    Without consideration, an essential element is missing to create a valid contract.

102.    Further, even if Adcock had executed subsequent Riders for subsequently formed companies, which he did not, the result would be the same.

103.    The GAI must stand on its own. The GAI independently must contain consideration. *See, e.g., Hunt v. Coker*, 741 So. 2d 1011, 1015 (Miss. Ct. App. 1999) ("Although Hunt's agreeing to buy Coker's agency and relocating his office into Coker's building may be considered a benefit and detriment that constitutes sufficient consideration, there was no independent consideration given to each option.")

104.    Further, the terms set forth in the GAI are sufficiently clear and unambiguous to show that the statute of frauds would apply to prohibit F&D from introducing extrinsic evidence to rebut the GAI.

105.    Here, Plaintiff's GAI simply failed to bargain for any consideration.

44

106.    The elements of a valid contract were not met.

107.    Because the GAI lacks consideration, it is void as a matter of law.

108.    As such, Defendant John W. Adcock seeks and is entitled to a declaratory judgment finding that the "General Indemnity Agreement" at issue, attached to Plaintiff's Complaint, is void as a matter of law for lack of consideration.

<u>**COUNT II**</u>
<u>**BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**</u>

109.    Defendants incorporate and reallege all the proceeding allegations as if fully set forth herein, including those contained in their Answer and Affirmative Defenses.

110.    F&D did not require obligees (owners and subcontractors) to comply with specific procedures, such as notice and termination procedures, to trigger F&D's obligations. The surety's obligation to pay delay damages is only triggered if the beneficiary follows the notice and termination procedures outlined in the bond. To the extent Defendants had any obligation to pay damages, it is only triggered if the surety F&D is obligated to pay.

111.    F&D breached its GAI, Rider, and/or bond agreements with each Defendant, and acted negligently and/or recklessly in paying claims that Defendants were not obligated to pay.

112.    F&D breached the duty of good faith and fair dealing implied in every contract.

113.    F&D did not pay claims in good faith.

114.    F&D failed to mitigate damages.

115.    F&D's payments were unauthorized and expressly objected to by the principal Defendant.

116.    F&D is not entitled to reimbursement for payment bond claims because payment was not yet due to subcontractors.

117.    F&D's refusal to defend the claims and pressure on Colony to abandon its projects constitutes bad faith.

118.    The settlements made by F&D were unreasonable and could have been defended.

119.    Further, F&D's bonds were not signed by the surety and/or its principal.

120.    This is a fundamental requirement for the bond to be enforceable.

121.    "All contracts contain an implied covenant of good faith and fair dealing in performance and enforcement." *Cenac v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992) (citing *Morris v. Macione*, 546 So. 2d 969, 971 (Miss. 1989)).

122.    "The duty of good faith and fair dealing arises from the existence of a contract between parties." *Id.*

123.    The duty is based upon fundamental notions of fairness and its scope necessarily varies according to the nature of the agreement. *Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 744 (Miss. 2019).

124.    "Good faith is the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party." *Id.*

125.    F&D's refusal to defend the claims and pressure on Colony to abandon its projects constitutes bad faith.

126.    F&D's refusal to defend the claims and pressure on Colony to abandon its projects constitutes a breach of the duty of good faith and fair dealing.

127.    Defendants are additionally entitled to exemplary/punitive damages, costs, and attorney's fees in an amount to be determined by the jury and/or trier of fact.

## PRAYER FOR RELIEF

128.    Based on the forgoing, Counter-Plaintiffs request that the Court award them the following relief:

    a.  A declaratory judgment finding that the "General Indemnity Agreement" at issue, attached to Plaintiff's Complaint, is void as a matter of law for lack of consideration;

    b.  Judgment for damages against F&D for the Breach of Duty of Good Faith and Fair Dealing;

    c.  Dismissal of F&D's claims against Counter-Plaintiffs;

    d.  An award of restitution;

    e.  Judgment for compensatory and punitive damages;

    f.  Pre-judgment and post-judgment interest at the maximum rate allowed by law;

    g.  Attorney's fees and costs incurred by Counter-Plaintiffs; and

    h.  All other relief, in law or equity, as the Court may deem just and appropriate under the circumstances.

129.    Counter-Plaintiffs John W. Adcock and Colony Construction, LLC requests a trial by jury on all issues so triable.

130.    Counter-Plaintiffs John W. Adcock and Colony Construction, LLC reserve the right to amend their Answer, Affirmative Defenses, and Counter Complaint.

WHEREFORE PREMISES CONSIDERED, Counter-Plaintiffs John W. Adcock and Colony Construction, LLC respectfully request that the Court award them the relief requested herein, as well as all other proper relief to which they are entitled.

RESPECTFULLY SUBMITTED, this, the 9th day of October 2024.

GREATER SOUTHEAST CONSTRUCTION, LLC, COLONY CONSTRUCTION, LLC, NOBLE VII, LLC, ONE3 ELECTRIC, LLC, AND JOHN W. ADCOCK

*/s/ Dorsey R. Carson, Jr.*
Dorsey R. Carson, Jr., MSB #10493
Kathryn P. Goff, MSB #105678
*Attorneys for Defendants/Counter-Plaintiffs*

**OF COUNSEL**:

CARSON LAW GROUP, PLLC
Capital Towers, Suite 1336
125 South Congress Street
Jackson, Mississippi 39201
Telephone: 601-351-9831
Facsimile:  601-510-9056
Emails: dcarson@thecarsonlawgroup.com
          kgoff@thecarsonlawgroup.com

## CERTIFICATE OF SERVICE

I, Dorsey R. Carson, Jr. hereby certify that I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

This, the 9th day of October 2024.

_/s/ Dorsey R. Carson, Jr._____

OF COUNSEL